Filed 4/15/26 (unmodified opn. attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MELISSA I. AERNI et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> RR SAN DIMAS, L.P., et al., <br><br> Defendants and Respondents. | B341484 <br><br> (Los Angeles County Super. Ct. No. 22STCV37210) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion in this matter, filed March 25, 2026, is modified as follows:

    1.    Footnote 6, on p. 16, is deleted.

    2.    Footnotes 7 through 9 are renumbered accordingly.

The petition for rehearing is denied. There is no change in the judgment.

_____

EDMON, P. J.          EGERTON, J.          ADAMS, J.

Filed 3/25/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MELISSA I. AERNI et al., | B341484 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV37210) |
| v. | |
| RR SAN DIMAS, L.P., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lawrence Riff, Judge. Reversed and remanded.

Clarkson Law Firm, Glenn A. Danas, Brent A. Robinson; Yash Law Group and Yashdeep Singh for Plaintiffs and Appellants.

Chen Horwitz & Franklin and John Horwitz for Defendants and Respondents.

————————————

Plaintiffs Melissa I. Aerni and Katherine Atsaves brought this putative class action against defendants RR San Dimas, L.P. and Mountain High/Holiday Hill Corporation, owners of the Red Roof Inn in San Dimas (the hotel), alleging violations of Civil Code section 1940.1.[1]  Section 1940.1 was intended to curb what its drafters referred to as the "28-day shuffle"—the practice of some residential hotels of requiring residents to move out, or check out and reregister, every 28 days to avoid obtaining tenant protections.  Consistent with this purpose, the statute provides a private right of action to plaintiffs who can prove the following: (1) the plaintiff occupied a "residential hotel"— i.e., a multi-unit building used, or intended to be used, as guests' primary residence, unless the building is "primarily" used by guests who stay fewer than 30 days and have another primary residence; (2) the hotel required the plaintiff to move out, or to check out and reregister, prior to 30 days of occupancy; and (3) a purpose of the hotel's move-out policy was to maintain the plaintiff's "transient occupancy" status—that is, to prevent the plaintiff from occupying the hotel for 30 days or more.  (§ 1940.1, subd. (a).)

Plaintiffs appeal from the trial court's denial of class certification.  The trial court found that the proposed class— individuals who stayed at the hotel at any time between November 2018 and the present, and who moved out, or checked out and reregistered, after 28 consecutive days of occupancy— was numerous and ascertainable, and the proposed class representatives had claims typical of the class and could

---

[1]     Subsequent statutory references are to the Civil Code unless indicated otherwise.

2

adequately represent it. The trial court nonetheless denied class certification because it concluded that individualized issues predominated over common ones. In coming to this conclusion, the trial court interpreted section 1940.1 to require individualized proof that class members used the hotel as their "primary residence."

We conclude that the trial court erred by interpreting section 1940.1 to require individualized proof that class members used the hotel as their "primary residence." We therefore reverse the order denying class certification and remand the matter to the trial court to revisit the class certification question.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Plaintiffs' hotel stay.

Defendants own the hotel, a 134-room economy hotel in San Dimas, California. Since at least November 2018, the hotel has enforced a maximum 28-day stay policy that applies to all guests. Under that policy, at check-in the hotel advises guests verbally and in writing that they may register for a maximum of 28 days, and it requires guests to initial their acknowledgement of the maximum-stay policy. When a guest stays 28 uninterrupted days, the hotel requires the guest to check-out and completely vacate the property for at least three days before reregistering. A representative of the hotel's general partner testified that a purpose of this policy is to avoid creating a landlord-tenant relationship with guests.

Plaintiffs registered as guests on multiple occasions from June 2022 to November 2022. Their 28-day stays included June 7, 2022 to July 5, 2022, July 8, 2022 to August 5, 2022, August 9, 2022 to September 6, 2022, September 9, 2022 to

3

October 7, 2022, and October 17, 2022 to November 14, 2022. Each time their 28-day maximum was reached, plaintiffs checked out of the hotel and stayed elsewhere, typically in their vehicle or at another motel, for three days before checking back into the hotel.

## II.    Complaint and motion for class certification.

*Complaint.*  In November 2022, plaintiffs filed a putative class action against defendants alleging four causes of action: violations of section 1940.1, violations of section 52.1,[2] negligence, and unfair competition.  All four causes of action were premised on defendants' alleged violations of section 1940.1.

*Motion for Class Certification.*  In April 2024, plaintiffs moved for certification of a class defined as:  " 'All persons who stayed at the hotel located at 204 Village Court, San Dimas, California 91773 and moved out, or checked out and re-registered, after at least 28 consecutive days of occupancy, but before 31 consecutive days of occupancy at any time from November 28, 2018 through the present.' "

Plaintiffs argued that the proposed class was readily ascertainable and numerous.  They asserted that by defendants' own admission, more than 200 guests checked out of the hotel after exactly 28 days of occupancy, and more than 50 guests checked out of the hotel after exactly 28 days and then reregistered after 72 hours.  They thus suggested that the class

---

[2]    Section 52.1, known as the Tom Bane Civil Rights Act, creates a cause of action for interfering by threats, intimidation, or coercion with rights secured by federal or state law.

4

would contain at least 200 members, and could, based on plaintiffs' sampling of guest data, exceed 1,700 individuals.

Plaintiffs further contended that common questions of law and fact predominated. They noted that defendants' liability turned in part on whether the hotel was a "residential hotel"— that is, a building "containing six or more guestrooms or efficiency units . . . intended or designed to be used, or which are used, rented, or hired out, to be occupied, or which are occupied, for sleeping purposes by guests, which is also the primary residence of those guests, but does not mean any building containing six or more guestrooms or efficiency units, . . . which is primarily used by transient guests who do not occupy that building as their primary residence." (Health & Saf. Code, § 50519.) Plaintiffs offered the following evidence to show that the hotel's status as a "residential hotel" was a common question susceptible to common proof. The hotel consists of 134 rooms used as guestrooms, all of which have a telephone, television, sink, shower, tub, lockable door, microwave, and refrigerator. Half or fewer of the rooms are equipped with electric cooktops. Coin-operated laundry facilities are available on site for guest use. Guests may receive mail and packages at the hotel. Some guests stay at the hotel for months at a time, and some have resided there for more than five years. The hotel is advertised on Craigslist as an "extended stay" property with weekly rates of $427. These advertisements are posted in the "apartments, housing for rent" section of Craigslist. Some guests list the address of the hotel as their primary residence on their guest registration cards, and defendants do not prohibit this practice. And, a hotel principal testified that guests may occupy the hotel long-term as long as they check out for three days every 28 days.

Plaintiffs contended that a purpose of the hotel's 28-day maximum-stay policy was to maintain the transient occupancy status of all class members. In support, plaintiffs pointed to evidence that the hotel required all guests to check out of the hotel after the 28th consecutive day of occupancy; guests could not return to their units at the hotel for at least three days; guests could reside at the hotel indefinitely so long as they checked out for three days every 28 days; and a hotel principal testified at his deposition that the policy was intended, in part, to avoid lengthy eviction proceedings.

Finally, plaintiffs urged that their claims were typical of the class, they could adequately protect the interests of absent class members, and a class action was a superior method of adjudication because the claims were predicated on a uniform policy that was applied to all class members and could be established through common proof.

***Opposition.*** Defendants opposed class certification. Defendants argued the hotel was not a "residential hotel" within the meaning of the statute because it was used primarily by transient guests. In support, defendants produced evidence that the hotel did not rent rooms on a monthly or yearly basis, guests were not asked to sign leases, and guests were told that their stays could not exceed 28 days. After 28 days, guests were required to move out, and they could not reregister for at least three days. The hotel did not store belongings for extended stay guests or hold rooms for them. The hotel had never applied for a local conditional-use permit for single use occupancy, which

6

would have allowed the hotel to lawfully operate as a residential dwelling.[3]

Defendants also argued that all potential class members would have to prove the hotel was their primary residence to succeed in the action. Defendants urged: "The class definition . . . ignores the crucial preliminary issue under Section 1940.1 of ascertaining who would qualify as members of the putative class based upon their use of a building as their primary residence. An individualized inquiry would be required of each potential class member to determine whether the building was that individual's primary residence at a time when the building was not primarily used by transient guests. . . . Since there is no readily available means or method for identifying possible members of such a class in this case, the purported class is not readily ascertainable." Defendants also urged that plaintiffs were not typical and could not adequately represent the proposed class.

***Reply.*** In reply, plaintiffs argued that "requiring proof that the Hotel is each [c]lass member's primary residence . . . is not a proper precondition for class membership." Plaintiffs asserted: "To qualify as a residential hotel, the Hotel cannot be primarily used (i.e., occupancy of more than 50%) by transient guests. (Health & Saf. Code, § 50519(b)(l).) As Defendants acknowledge, a statistical analysis about the total number of guests at the Hotel and the length of their stays at the Hotel can

---

[3]     Defendants also offered proof from a data analyst regarding occupancy data. However, plaintiffs objected to the analyst's testimony as lacking foundation because the analyst did not disclose the formulas that allegedly supported his analysis. The trial court sustained the objection and did not consider the data analyst's testimony; thus, we do not describe it.

be conducted. Such common proof would establish that the Hotel is not primarily used by transient guests and, therefore, qualifies as a residential hotel, subjecting Defendants to class-wide liability."

## III.  Denial of class certification.

The trial court denied plaintiffs' class certification motion. The court found that the class was sufficiently numerous and ascertainable, plaintiffs' claims were typical of those of the absent class members, and plaintiffs and their trial counsel were adequate representatives of the proposed class. The trial court also found that whether the hotel enforced a practice of requiring hotel guests to move out, or to check out and reregister, before the expiration of 30 days occupancy was subject to common proof. However, the trial court found that whether the hotel was a "residential hotel" was not susceptible of common proof because the court interpreted section 1940.1 to require proof that each plaintiff used the hotel as his or her "primary residence." The trial court explained: "The question at hand is whether the status of the hotel is a question susceptible of common proof. The question largely focuses on the composition of the hotel building and how it is intended to be used, or is actually used, by hotel guests. . . .

"Furthering their argument the hotel was not a 'residential hotel,' Defendants contend the question of whether a guest used the hotel as his or her 'primary residence' is not a question susceptible of common proof. The use of a building as a guest's 'primary residence,' as mentioned, is a defining feature of a residential hotel. In Defendants' view, '[a]n individualized inquiry would be required of each potential class member to determine whether the building was that individual's primary

8

residence at a time when the building was not primarily used by transient guests. Valid membership in the putative class unavoidably requires a determination of the residency status of the putative class member, as well as the residency status of others who occupied the hotel at the same time.' [Record citation.] Defendants contend that every hotel guest was 'required to provide their permanent address when registering' and therefore each member of the class would 'have to explain [his or her] permanent address was not [his or her] primary residence.' [Record citation.]

"In reply, Plaintiffs argue Defendants 'conflate the Hotel being a "primary residence" of guests, which qualifies the Hotel as a residential hotel, with "permanent residence" of guests, which is not required.' [Record citation.] They urge that '[r]esolving the question of liability—that is, whether the Hotel qualifies as a residential hotel—must wait until after class certification.' [Record citation.] 'After class certification, Plaintiffs could conduct further investigation and discovery into the occupancy rate at the Hotel and the apportionment of occupancy between transient and non-transient guests. . . .' [Record citation.]

"Defendants' briefing makes clear: one of their principal theories is the hotel did not qualify as a 'residential hotel' within the meaning of Civil Code section 1940.1. A residential hotel is partly defined as a building intended or designed to be used, or which are used, rented, or hired out, to be occupied, or which are occupied, for sleeping purposes by guests, 'which is also the primary residence of those guests. . . .' A question at trial, apparently, will be whether the hotel was 'also the primary residence of those guests.' The issue here is whether this

9

question is susceptible of common proof at trial. . . .  [T]he Court concludes the answer is no."

Plaintiffs timely appealed from the order denying class certification.

## DISCUSSION

Plaintiffs urge the trial court erred by denying class certification on the ground that section 1940.1 requires plaintiffs to prove the hotel was their primary residence.  We agree.

### I.  Legal standards.

#### A.  Class certification and standard of review.

Code of Civil Procedure section 382 authorizes class suits when the subject of the suit "is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."  Our Supreme Court has articulated "clear requirements for the certification of a class"—namely, (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; (3) class representatives who can adequately represent the class; (4) an ascertainable and sufficiently numerous class; and (5) substantial benefits from certification that render proceeding as a class superior to the alternatives.  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*); *Leeds v. City of Los Angeles* (2025) 115 Cal.App.5th 537, 545 (*Leeds*).)

The certification question " 'is "essentially a procedural one that does not ask whether an action is legally or factually meritorious," ' " and thus resolution of disputes over the merits of a case "generally must be postponed until after class certification has been decided [citation], with the court assuming for purposes

10

of the certification motion that any claims have merit [citation]." (*Brinker*, *supra*, 53 Cal.4th at p. 1023.)  If evidence or legal issues "germane to the certification question bear as well on aspects of the merits," a court may properly evaluate them.  (*Id.* at pp. 1023–1024.)  However, "[s]uch inquiries are closely circumscribed," and thus "any 'peek' a court takes into the merits at the certification stage must 'be limited to those aspects of the merits that affect the decisions essential' to class certification." (*Ibid.*)

In the present case, only a single element of class suitability is in dispute:  whether individual or common questions predominate.  To assess predominance, a court "must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible.  [Fn. omitted.]  'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' " (*Brinker*, *supra*, 53 Cal.4th at pp. 1021–1022.)

## B.    Appealability and standard of review.

An order denying class certification is appealable under the " 'death knell' " doctrine.  (See *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 656, fn. 8; *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757–758; *Arzate v. ACE American Ins. Co.* (2025) 108 Cal.App.5th 1191, 1198 ["under the ' "death knell" ' doctrine, an order denying the certification of a class is appealable even though no statute says so because 'the denial of class certification is "tantamount to a dismissal of the action as to all members of the class other than plaintiff," ' and is in essence a final judgment

11

as to all potential class members apart from the named plaintiff"].)

An appellate court's review of a class certification order is narrowly circumscribed. " 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Brinker, supra,* 53 Cal.4th at p. 1022.) Thus, " '[u]nlike the general rule compelling a reviewing court to scrutinize the result below, not the trial court's rationale, we analyze the propriety of an order denying class certification based solely on the lower court's stated reason for the decision.' (*Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1223–1224.)" (*Leeds, supra,* 115 Cal.App.5th at pp. 545–546.) " 'Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal " 'even though there may be substantial evidence to support the court's order.' " ' " (*Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 968; see also *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 537 ["[a] certification decision is reviewed for abuse of discretion, but when the supporting reasoning reveals the court based its decision on erroneous legal assumptions about the relevant questions, that decision cannot stand"].)

12

## II. The trial court's denial of class certification was based on the erroneous legal assumption that proving the hotel was "residential" required individualized proof.

The trial court concluded that common issues of law or fact did not predominate because in the court's view, to establish a claim under section 1940.1, each plaintiff had to prove that the hotel was "their *primary* residence." This was error.

When we interpret a statute, our task " 'is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166.) We review a statute's meaning de novo. (See *Law Office of Carlos R. Perez v. Whittier Union High School Dist.* (2023) 87 Cal.App.5th 463, 470.)

Section 1940.1 was adopted in 1990 and amended in 2004. As described in its legislative history, the statute was intended to curb the "28-day shuffle"—the practice engaged in by some owners and managers of residential hotels of requiring residents to move out and reregister every 28 days to avoid obtaining

13

tenant protections.[4]  Committee reports noted that many individuals seek shelter in hotels " 'as a stop gap measure,' " and " 'for others, hotels provide a last resort.  Recognizing this reality, the legislature has provided that guests who spend more than 30 days in a "residential hotel" are to be afforded the same legal protections as a tenant who can pay for more traditional housing.' "  (Assem. Floor Analysis, Concurrence in Senate Amendments of Assem. Bill No. 2867 (2003–2004 Reg. Sess.) as amended Aug. 9, 2004, p. 2.)  "By helping to cut down on the 28-day shuffle, this bill seeks to ensure that occupants of residential hotels who remain in their occupancies after 30 days are granted a number of important tenant protections, including, . . . 'minimum requirements that owners maintain plumbing, heating and electrical services in good order; authorization for tenants to repair uninhabitable conditions and deduct the costs from the rent and retaliatory eviction protections.' "  (*Ibid.*)

As relevant here, section 1940.1, subdivision (a) states: "No person may require an occupant of *a residential hotel,* as defined in Section 50519 of the Health and Safety Code, to move, or to check out and reregister, before the expiration of 30 days occupancy if a purpose is to have that occupant maintain *transient occupancy status* pursuant to paragraph (1) of subdivision (b) of Section 1940.  Evidence that an occupant was required to check out and reregister shall create a rebuttable presumption, which shall affect solely the burden of producing evidence, of the purpose referred to in this subdivision."  (Italics added.)  Violations of section 1940.1 are punishable by a civil

---

[4]    The court previously deferred ruling on plaintiffs' request for judicial notice filed May 7, 2025.  We now grant the request.

14

penalty of $500, and the prevailing party is also entitled to reasonable attorney fees.  (§ 1940.1, subd. (b).)

Health and Safety Code section 50519 defines a " 'residential hotel' " as "any building containing six or more guestrooms or efficiency units . . . intended or designed to be used, or which are used, rented, or hired out, to be occupied, or which are occupied, for sleeping purposes by guests, which is also the primary residence of those guests, but does not mean any building containing six or more guestrooms or efficiency units . . . which is primarily used by transient guests who do not occupy that building as their primary residence."  The statute does not define what percentage of guests must be nontransient in order for a hotel to be "residential," or what proof is required to establish that a hotel is a guest's "primary residence."[5]

"Transient occupancy" within the meaning of section 1940, subdivision (b)(1) is occupancy "subject to tax under Section 7280 of the Revenue and Taxation Code."  Revenue and Taxation Code section 7280, subdivision (a) permits cities and counties to tax occupancy of less than 30 days, and thus "[t]ransient occupancy status" as used in section 1940.1, subdivision (a) means an occupancy of less than 30 days.

Considering these sections together, a plaintiff alleging a violation of section 1940.1 therefore must prove the following:

---

[5]     An initial version of the bill defined a residential hotel as one with at least a 25 percent nontransient occupancy, but this definition was deleted from the final version of the bill "[d]ue to the inability of the interested parties to agree upon a consensus definition for residential hotel."  Instead, the final version "restore[d] the existing cross-reference" to the Health and Safety Code.

(1) the plaintiff occupied a "residential hotel"—i.e., a multi-unit building used, or intended to be used, as guests' primary residence, unless the building is "primarily" used by guests who stay fewer than 30 days and have another primary residence; (2) the hotel required the plaintiff to move out, to or check out and reregister, prior to 30 days of occupancy; and (3) a purpose of the hotel's move-out policy was to maintain the plaintiff's "transient occupancy" status—that is, to prevent the plaintiff from occupying the hotel for 30 days or more.  (§ 1940.1, subd. (a).)

Contrary to the trial court's conclusion, nothing in the statute's plain language requires plaintiffs alleging a violation of section 1940.1 to demonstrate that the hotel was *their own* primary residence.  The statute *does* require plaintiffs to demonstrate that the hotel is "residential"—that is, it is used or is intended to be used as a "primary residence," and it is not "primarily used" by transient guests who have other "primary residence[s]."  (See Health & Saf. Code, § 50519, subd. (b)(1).) But this is a hotel-specific inquiry, not a plaintiff-specific one, because it turns on the character of the hotel and its intended or actual use.  Stated differently, whether the hotel is "residential" depends on how the hotel *as a whole* is used or intended to be used, and whether a sufficient number of guests stay for fewer than 30 days and have other primary residences.[6]

---

[6] The statute's only individualized standing requirement is that the plaintiff was required "to move, or to check out and reregister, before the expiration of 30 days occupancy if a purpose is to have that [plaintiff] maintain transient occupancy status." (§ 1940.1, subd. (a).)  The trial court erred in concluding otherwise.

16

Defendants appear to concede that whether the hotel is residential is a hotel-wide inquiry. They nonetheless assert that this case is not appropriate for class treatment because "*each occupant* of [the] hotel would be subject to an individualized inquiry to determine whether the hotel was the guest's primary residence, or whether the guest was a transient guest of the hotel . . . at the time of an alleged violation of Section 1940.1. Only through such individualized inquiries could a determination be made regarding how the hotel was being primarily used at any specified time, and thus whether the hotel was or was not a residential hotel at that time." (Italics added.)

If determining whether the hotel is "residential" requires deciding whether it is each guest's "primary residence," as defendants suggest, then the task before the court will indeed be a complex one.[7] But any such inquiry would go to the *merits* of plaintiffs' causes of action, not to whether a class should be

---

[7] Plaintiffs urge that this kind of particularized inquiry is unnecessary—that " 'primary residence' means only where a person has fixed his or her ordinary dwelling without a present intention of removal," and thus " 'primary residence' may be determined by reference only to the duration of an occupant's stay in the hotel in question, with a stay of 28 days presumptively sufficient. . . . [¶] . . . [¶] . . . By providing for a violation of section 1940.1 to be presumed upon interruption of a single stay of 28 consecutive days . . . and by providing generally that statutory landlord-tenant protections vest after 30 days of occupancy . . . . the Legislature plainly intended for 'primary residence' to, at a minimum, encompass a stay in a hotel of 28 days or more." Because resolving this issue is not necessary to deciding the class certification motion, we do not reach it. (See *Brinker*, *supra*, 53 Cal.4th at p. 1025.)

17

certified. That is, if defendants are correct about the kind of proof necessary to establish that a hotel is "residential," then the plaintiffs may have to demonstrate that the hotel was the primary residence of a substantial number[8] of other guests during any applicable time period. But that inquiry is not made any more complex by expanding the plaintiff class to include *other individuals* who resided at the hotel during the relevant time period.

We note that there are substantial ambiguities in the statutory language. Notably, the statute does not define two of the key issues relevant to liability—namely, under what circumstances a hotel is a guest's "primary residence," and the numerical threshold at which a hotel is "primarily" used by transient guests who do not occupy the hotel as their primary residence. The statute also does not define the time period for evaluating a hotel's "residential" status—that is, how to determine a hotel's residential status if the hotel is used differently at different periods of time. These statutory ambiguities make it difficult to know precisely what showing the Legislature intended a plaintiff to have to make in order to prove a statutory violation. But the ambiguities go to the *merits* of the cause of action, which are not before us or the trial court in connection with a motion for class certification.[9]

---

[8]     See fn. 5, *ante*.

[9]     We urge the Legislature to rectify these ambiguities so trial courts will not be left to guess what standards apply to cases like this one. But pending that clarification, the limited nature of our appellate review precludes us from deciding them in the first instance. (See, e.g., *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th

18

For the foregoing reasons, the trial court erred by concluding that section 1940.1 requires plaintiffs to show that the hotel was their own primary residence. Because the trial court's order denying class certification was based on this legal error, we reverse the order denying class certification and remand this matter for the trial court to redetermine the motion. We express no opinion on how the trial court should exercise its discretion on remand.

1333, 1337 [" 'Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification' "]; *Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 689 [same].)

## DISPOSITION

We reverse the order denying class certification and remand the matter to the trial court for further proceedings consistent with this opinion.  Plaintiffs are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.

We concur:



EGERTON, J.



ADAMS, J.